IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

_____

COLLEEN HUBER, *Appellant,*

*v.*

ARIZONA NATUROPATHIC PHYSICIANS MEDICAL BOARD, *Appellee.*

No. 1 CA-CV 24-0551
FILED 09-30-2025

_____

Appeal from the Superior Court in Maricopa County
No.  LC2023-000039-001
The Honorable Joseph P. Mikitish, Judge

**VACATED AND REMANDED**

_____

COUNSEL

Mahaffy Law Firm PC, Gilbert
By Steven C. Mahaffy (argued)
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Casey Hutchinson, Kathryn E. Boughton, Luci Danielle Davis (argued)
*Counsel for Appellee*

The Butler Law Firm, Phoenix
By Everett S. Butler
*Co-Counsel for Amicus Curiae Construction Lawyers*

M.D. Williams Law, LLC, Scottsdale
By Matthew Williams
*Co-Counsel for Amicus Curiae Construction Lawyers*

_____

**OPINION**

_____

Presiding Judge Michael S. Catlett delivered the opinion of the Court, in which Judge Daniel J. Kiley joined. Vice Chief Judge David D. Weinzweig concurred in part and dissented in part.

_____

**C A T L E T T**, Judge:

¶1 This case requires us to decide how trial courts should review appeals from administrative agencies under A.R.S. § 12-910(D) when an appealing party demands a trial de novo with a jury. That subsection says that "[f]or review of final administrative decisions of agencies that regulate a profession or occupation" under certain listed statutes, "the trial shall be de novo" if demanded. A.R.S. § 12-910(D). The prior subsection—subsection C—says that "[o]n demand of any party, if a trial de novo is available under *this section*, it may be with a jury[.]" A.R.S. § 12-910(C) (emphasis added).

¶2 The Naturopathic Physicians Medical Board ("Board") licensed Colleen Huber ("Huber") to practice naturopathic oncology. After a patient complained, the Board investigated Huber, held a hearing with an Administrative Law Judge ("ALJ"), and revoked her license. Huber appealed to the superior court and requested a trial de novo with a jury. The superior court denied her jury-trial request and deferred to the Board's decision while ruling against her.

¶3 We vacate and remand for a new trial. Huber was entitled to have a jury decide whether her license should be revoked after a trial de novo (without deferring to the agency); she received neither a trial de novo nor a jury trial. We also answer various questions about how trial courts should proceed after a party demands a trial de novo under § 12-910(D).[1]

**FACTS AND PROCEDURAL HISTORY**

¶4 Huber owned a medical clinic practicing naturopathic oncology. In September 2020, a patient to whom Huber gave therapeutic

_____

[1] Because the superior court did not hold a de novo jury trial, we need not address what standard(s) of review apply when resolving an appeal from a trial de novo under § 12-910(D).

intravenous ("IV") treatments complained to the Board. Huber upset the patient by not disclosing the nutrients in her IV treatments. Huber responded that she disclosed the nutrients in the IV, but she would not disclose the amounts of those nutrients because they are proprietary.

¶5 The Board investigated Huber by reviewing her medical records for the complainant and other patients. Following that review, the Board issued a complaint and noticed a hearing, alleging Huber engaged in unprofessional conduct. An ALJ held an evidentiary hearing and, afterward, concluded Huber committed unprofessional conduct. *See* A.R.S. § 32-1501(31)(b), (l) (r). The ALJ recommended the Board revoke Huber's license, and the Board adopted that recommendation.

¶6 Huber appealed to the superior court, requesting a trial de novo with a jury. The court granted Huber's request for a trial de novo but denied her a jury. The court asked the parties for their positions on trial procedure. Huber, citing A.R.S. § 12-914(B), claimed the Arizona Rules of Civil Procedure ("Civil Rules") applied, so the parties should file new pleadings, conduct more discovery, and move for summary judgment. The Board thought A.R.S. § 12-910(F) governed the court's review and the parties should engage in no new disclosure or discovery.

¶7 The court sided with the Board, explaining that a trial de novo is still an "Administrative Review action," so the court could consider the administrative record and the Board's decision. The court, despite granting a trial de novo, also would review the Board's decision for substantial evidence under § 12-910(F). Although the court noted it owed no deference to the Board on legal or factual questions, it concluded that "[a] lack of deference [did] not mean ignoring all previous proceedings." On which rules apply, the court agreed the Civil Rules do, but it concluded the parties need not file formal pleadings or conduct more discovery. It also concluded it would consider the administrative record in its decision and allow motions "only as relevant to the trial, e.g., motions in limine." The court believed these procedures were consistent "with the Rules of Procedure for Judicial Review of Administrative Decisions[.]"

¶8 The superior court held a one-day bench trial. When the trial started, the court required Huber to present her evidence first. Huber testified. Then, during its case, the Board called its executive director and an expert witness. Neither party supplemented the administrative record with additional exhibits. At trial's conclusion, the court requested proposed findings of fact and conclusions of law from the parties.

¶9          Following those submissions, the court affirmed the Board's revocation order.   The court, applying the standard in § 12-910(F), concluded that the "record contains substantial evidence that Dr. Huber engaged in unprofessional conduct" and she "has not shown that the Board's action was contrary to law[,] unsupported by substantial evidence, arbitrary or capricious, or an abuse of discretion."

¶10          Huber timely appealed; we have jurisdiction.  *See* A.R.S. § 12-913.

## DISCUSSION

¶11          This appeal turns on statutory interpretation.    When interpreting statutes, we ignore the superior court's views—we start from scratch ("de novo").  *State v. Luviano*, 255 Ariz. 225, 227 ¶ 7 (2023).

¶12          We start with the text.  *See Planned Parenthood Ariz., Inc. v. Mayes*, 257 Ariz. 137, 142 ¶ 15 (2024).  We interpret statutory terms using their "commonly accepted meaning[]," unless they have a special meaning. *Id.* ¶ 16.  But focusing on text does not mean interpreting it hyperliterally or in a vacuum—context matters.  *Id.* ¶ 15; *State v. Serrato*, ___ Ariz. ___, 568 P.3d 756, 760 ¶¶ 15–16 (2025).   Context stems from the statute's "entire text" and "related statutes on the same subject."  *Planned Parenthood Ariz., Inc.*, 257 Ariz. at 142 ¶ 15.  Context matters because statutes should blend with the broader statutory scheme.  *See id.*  We should not, for example, interpret a subsection limiting the length of "nails" without knowing whether the broader scheme regulates salons or hardware stores. Considering context achieves another aim—not rendering any part of a statute "void or trivial" or absurd.  *Id.*; *Serrato*, 568 P.3d at 762 ¶ 28.

¶13          If a term or phrase, in context, has an accepted meaning, we apply it.  *See Planned Parenthood Ariz., Inc.*, 257 Ariz. at 142 ¶ 16.  But parties rarely agree on meaning in cases requiring statutory interpretation.  Still, party (or even judicial) disagreement does not create ambiguity.  *Id.* at 143 ¶ 17.  Rather, ambiguity exists when, after reviewing a statute's text and that in other statutes on the same subject, we cannot tell which of two (or more) reasonable meanings applies.  *Id.*  If that occurs, we also analyze the statute's "historical background, its spirit and purpose, and the effects and consequences of competing interpretations."  *Id.* at 142 ¶ 17.

¶14          Huber raises seven issues: (1) whether her claims should have been tried to a jury; (2) whether the court conducted a trial de novo; (3) whether she had the burden of proof; (4) whether the court should have allowed her to counterclaim against the Board; (5) whether the court should

have required the parties to file new pleadings; (6) whether the court properly admitted the entire administrative record; and (7) whether the Civil Rules apply in a trial de novo challenging an administrative decision. We resolve each issue in that order.

## I.

**¶15**      Starting with the jury trial issue, a party has a right to a jury "when afforded by a statute or the constitution." *Williams v. King*, 248 Ariz. 311, 315 ¶ 15 (App. 2020). Unless a statute says so, "there is no right to a jury trial on statutory claims" not existing at common law pre-statehood. *In re Estate of Newman*, 219 Ariz. 260, 272 ¶ 45 (App. 2008). All agree Huber's claim did not exist pre-statehood, so a statute must grant her a jury trial. Huber maintains § 12-910(C) ("910(C)") does so.

## A.

**¶16**      Huber's appeal arises under § 12-910(D) ("910(D)"). One might ask, then how can 910(C) grant her a jury trial? The answer: 910(C) says, "[I]f a trial de novo is available under *this section*, it may be with a jury[.]" (Emphasis added). The parties agree 910(D) gave Huber a trial de novo, but they disagree whether 910(C) gave her a jury trial.

**¶17**      The Board argues it did not. The Board believes the jury trial referenced therein applies only to appeals under that *subsection*. In the Board's view, because 910(C) expressly provides a jury trial, if the legislature wanted 910(D) to do so as well, it would have said so in 910(D). We should not, it says, draw a "technical distinction" between "section" and "subsection."

**¶18**      Section 12-910 governs judicial review in "[a]n action to review a final administrative decision." A.R.S. § 12-910(A). Subsection (D)—which Huber invoked—governs "review of final administrative decisions of agencies that regulate a profession or occupation" under title 32 and other chapters and articles in title 36. A.R.S. § 12-910(D). When a party appeals under 910(D), "the trial shall be de novo if trial de novo is demanded in the notice of appeal or motion of an appellee[.]" A.R.S. § 12-910(D). The Board is correct that 910(D) says nothing about a jury trial.

**¶19**      But Huber claims 910(C) grants her a jury trial. That subsection governs appeals from certain agencies exempt from title 41. A.R.S. § 12-910(C). But, unlike 910(D), 910(C) grants a jury trial. It concludes: "On demand of any party, if a trial de novo is available *under this section*, it may be with a jury[.]" A.R.S. § 12-910(C) (emphasis added).

We must decide whether "section" in 910(C) references § 12-910 generally—so Huber could opt for a jury trial—or only 910(C)—so she could not.

¶20        In 1954, the legislature codified judicial review of agency decisions in Arizona Code § 4-911.  1954 Ariz. Sess. Laws, ch. 101, § 11 (2d Reg. Sess.) (H.B. 159); Ariz. Code § 4-911 (1939 & Supp. 1954).  But the 1954 law did not use the term "section"; it provided that "[t]rial de novo with a jury may be had upon the demand of any party."  Ariz. Code § 4-911 (1939 & Supp. 1954).

¶21        Then, in 1955, the legislature adopted the Arizona Revised Statutes ("Revised Statutes"), publishing them in 1956.  The legislature delegated responsibility for compiling the Revised Statutes to the Arizona Code Commission ("Commission").  While compiling the Revised Statutes, the Commission renumbered § 4-911 as A.R.S. § 12-910 and made revisions.  Relevant here, the Commission split § 4-911 in two—subsections (A) and (B)—and modified the last sentence in (B) to say: "When a trial de novo is available under the provisions of *this section*, it may be had with a jury upon demand of any party."  A.R.S. § 12-910(B) (1956) (emphasis added).

¶22        When interpreting statutes, we use "the original public meaning understood by those who used and approved them." *Matthews v. Indus. Comm'n.*, 254 Ariz. 157, 163 ¶ 29 (2022).  Because we interpret statutes to "mean what they conveyed to reasonable people" when enacted, we must adopt the public meaning of "section" in 1955.  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 16 (2012) ("*Reading Law*"); *see also* A.R.S. § 1-213.

¶23        But the legislature did not write the term "section."  Instead, the Commission wrote it when compiling the Arizona Revised Statutes.  *See* 1954 Ariz. Sess. Laws, ch. 43, § 2 (2d Reg. Sess.) (H.B. 87).  The legislature then adopted the Commission's work and enacted § 12-910 in the Revised Statutes.  *See* 1955 Ariz. Sess. Laws, ch. 3, § 1 (3d Spec. Sess.) (H.B. 1).

¶24        Luckily, we know what the Commission meant by "section," and thus what that term meant to the public in 1955.  The Commission explained the term's meaning.  In a report ("Report") at the beginning of the Revised Statutes, the Commission's Chief Counsel ("Chief Counsel") explained that "[a] compound or hyphenated numbering system is used in the Revised Statutes."  2 Ariz. Code Comm'n, *Arizona Revised Statutes Annotated* at xii (1956); *see* 1956 Ariz. Sess. Laws, ch. 129, § 2 (2d Reg. Sess.) (S.B. 50) (directing the publication of prefatory material for the Arizona

Revised Statutes). Under that system, the numbers left of the hyphen "represent the number of the title in which the section appears" and the numbers to the right "indicate the section number." 2 Ariz. Code Comm'n at xii. The Report explained that "[w]here appropriate, sections are divided into subsections, designated by a capital letter: i.e., Subsection A of § 1-105." *Id.* The Commission eventually adopted the Chief Counsel's Report and forwarded it to the legislature with the Revised Statutes. *Id.* at vii.

¶25        Applying the Commission's explanation, "section" meant § 12-910 in its entirety. If the Commission or the legislature had limited jury trials to appeals under § 12-910(B), it would have used "subsection," not "section." 2 Ariz. Code Comm'n at xii. After all, § 12-910(B) was designated with a capital letter, making it a subsection. So, in 1955, the term "section" in § 12-910(B) (now 910(C)) referred to § 12-910 in its entirety.

**B.**

¶26        Nothing after 1955 changed what "section" meant in 910(C) (formerly § 12-910(B)). Quite the opposite. Since then, the legislature amended § 12-910 at least seven times without changing "section" to "subsection." *See* A.R.S. § 12-910 (1980); A.R.S. § 12-910 (1996); A.R.S. § 12-910 (2000); A.R.S. § 12-910 (2012); A.R.S. § 12-910 (2017); A.R.S. § 12-910 (2018); A.R.S. § 12-910 (2021). What is more, the legislature repeatedly amended § 12-910 to use "section" and "subsection" as described in the Report. For example, in 1996, the legislature amended § 12-910(A) so parties may request an evidentiary hearing "to the extent necessary to make the determination required by *subsection* [(F)] of this *section*." 1996 Ariz. Sess. Laws, ch. 102, § 16 (2d Reg. Sess.) (S.B. 1056) (emphasis added). And, in 2018, the legislature added § 12-910(F) (now § 12-910(G)), which starts, "Notwithstanding *subsection* [F] of this *section*." 2018 Ariz. Sess. Laws, ch. 180, § 1 (2d Reg. Sess.) (H.B. 2238) (emphasis added). After its many iterations, § 12-910 now uses "section" four times and "subsection" three times. *See* A.R.S. § 12-910(A), (C), (F), (G), (H). By using those two terms consistently throughout § 12-910, the legislature showed it understands the difference between "section" and "subsection"—"section" means the whole statute and "subsection" means parts of it.

¶27        Interpreting "section" to mean "subsection" would give "section" two different meanings in the same statute. "[S]ection" in § 12-910(A) refers to § 12-910 in its entirety—§ 12-910(A) uses the phrase "required by subsection F of this section." Ditto for "section" in § 12-910(G)—it uses the phrase "[n]otwithstanding subsection F of this section." But the Board reads "section" in 910(C) to mean "subsection." We usually

do not give a word two different meanings within one statute. We, instead, presume that "a word or phrase bears the same meaning throughout a text." *Fann v. State*, 251 Ariz. 425, 442 ¶ 60 (2021). We also presume that, if a statute uses one term in one place and a different term in another, "the different term denotes a different idea." *Reading Law* 170. The Board has not overcome either presumption.

¶28        Add to this that, when the legislature enacted 910(D) in 2021, it would have understood "section" in 910(C) as meaning § 12-910 in its entirety. The legislature uses a Bill Drafting Manual ("Manual") from the Arizona Legislative Council. The 2021–2022 Manual explained that "A.R.S. sections can be divided into the following division units, designated as: A. Subsection (capital letter followed by a period). 1. Paragraph (Arabic numeral followed by a period). (a) Subdivision (lowercase letter in parentheses). (i) Item (lowercase Roman numeral in parentheses)." Ariz. Legis. Council, *The Arizona Legislative Bill Drafting Manual 2021–2022* § 6.7, at 84. The Manual went on, "In referring to a section of the statutes within the body of the bill, the word 'section' is written out, as 'section 35-173." *Id.* at 85. But, "[i]f making a reference within a section to another division unit in that section, use the following style: . . . as provided in subsection A, paragraph 1 of this section." *Id.*

¶29        So the 2021 legislature would have understood that, by referring to "this section," and not "this subsection," 910(C)'s jury-trial provision applies to any trial de novo available in § 12-910, not just in 910(C). *See Planned Parenthood Ariz., Inc.*, 257 Ariz. at 144 ¶ 24 (using the Manual to interpret a statute); *see also* Tamara Herrera, *Getting the Arizona Courts and Arizona Legislature on the Same (Drafting) Page*, 47 Ariz. St. L.J. 367, 388 (2015) ("[I]t makes sense for the Court to use the [M]anual as a statutory interpretation tool."). With that understanding, the legislature did not include a jury trial right in 910(D)—because there was no need to do so. The legislature, instead, granted a trial de novo in 910(D) and, by doing so, gave those like Huber a jury trial right under the last sentence in 910(C).

## C.

¶30        Caselaw also supports Huber. In *Canon Sch. District No. 50 v. W.E.S. Constr. Co.* ("*Canon*"), 177 Ariz. 526 (1994), our supreme court decided whether "section" means "subsection." There, a construction company claimed a school district breached a contract. *Id.* at 527. The contract allowed arbitration, which the construction company demanded. *Id.* The district sued, arguing § 15-213 invalidated the arbitration provision. *Id.* The construction company responded that § 15-213(D) saved the

arbitration provision. *Id.* at 528. At that time, § 15-213(D) said, "*This section shall not be construed to void any provision in the contract*" providing "for arbitration[.]" *Id.* (emphasis added). Like the Board, the district maintained "this section" referred only to subsection (D), not to all of § 15-213. *Id.*

¶31 On appeal, we "speculated" that the legislature borrowed "this section" in § 15-213 from another statute but "inadvertently neglected to change the words 'this section' to 'this subsection[.]'" *Id.* at 529. We tried to fix that mistake ourselves—we interpreted "section" to mean "subsection." *Id.*

¶32 Our supreme court disapproved. The court explained the "most reliable index of a statute's meaning is its language[.]" *Id.* And, without "clear indication of legislative intent to the contrary," the court was "reluctant to construe the words of a statute to mean something other than what they plainly state." *Id.* The court concluded that "this section" referred to § 15-213 in its entirety. *Id.* at 529–30. The court also noted the legislature used "subsection" elsewhere in § 15-213. *Id.* at 529. So the legislature "used the words 'this section' in subsections (E) and (F) to refer to § 15-213 in its entirety." *Id.* The court would not "depart from a literal interpretation of" "this section." *Id.* at 530.

¶33 We too will not depart. Instead, "we construe the words 'this section' in [910(C)] to mean precisely what they say,"—"[o]n demand of any party, if a trial de novo is available under [§ 12-910], it may be with a jury[.]" *Id.*

¶34 Because a trial de novo is available under 910(D), Huber could also opt for a jury trial—and she did exactly that. *See Didlo v. Talley*, 21 Ariz. App. 446, 448 (1974) (The superior court cannot deny a trial de novo "once the elements of § 12-910(B) [(which is now § 12-910(C))] are evident."). The superior court erred by not giving Huber a jury trial instead of a bench trial. We vacate the judgment and remand for a new trial de novo with a jury. *See Brown v. Greer*, 16 Ariz. 215, 221 (1914) (granting a new trial when the court erroneously denied a jury trial); *cf. State v. Le Noble*, 216 Ariz. 180, 184–85 ¶ 19 (App. 2007) ("The right to a jury trial affects the framework within which the trial proceeds[.]" (cleaned up)).

## II.

¶35 The parties also dispute what review looks like when a party demands a trial de novo under 910(D). Huber acknowledges the superior court said it would hold a trial de novo, but she argues that did not happen. The Board responds that the court correctly applied A.R.S. § 12-910(F)

("910(F)"), "which requires courts to uphold an agency's factual findings if substantial evidence supports them even if other evidence before the agency would have supported a different conclusion."

¶36        We conclude 910(D) applies, not 910(F).  When a party timely demands a trial de novo, neither the court nor the jury defers to the agency's decision—on fact or law or anything else.

### A.

¶37        As explained, subsection 910(D) requires a "trial de novo" when demanded.  In a trial de novo, the court does not defer.  A trial de novo, instead, requires a trial anew—as if the administrative decision never happened.  "'De novo' literally means 'a second time.'"  *Schwab Sales, Inc. v. GN Constr. Co.*, 196 Ariz. 33, 35 ¶ 5 (App. 1998).  So in "a trial de novo . . . the case should be tried *in all manners* as though the superior court were the court of original jurisdiction."  *Duncan v. Mack*, 59 Ariz. 36, 40–41 (1942) (emphasis added); *see also Trial De Novo*, Black's Law Dictionary (4th ed. 1957) (defining "trial de novo" as "[a] new trial or retrial had in an appellate court in which the whole case is gone into as if no trial whatever had been had[.]").  The court, during a trial de novo, takes evidence on all relevant issues and "ignore[s] the [agency's] findings thereon and make[s] its own independent findings[.]"  *Duncan*, 59 Ariz. at 41; *see also id.* at 42 ("The trial court . . . acted within its jurisdiction in taking new evidence and forming its independent conclusion.").

¶38        We do not break new ground.  Our supreme court has repeatedly "interpreted 'trial de novo' to mean a case to be tried in all manners as though the superior court were the court of original jurisdiction."  *Horne v. Super. Ct.*, 89 Ariz. 289, 291 (1961); *see also Burris v. Davis*, 46 Ariz. 127, 132 (1935) (when "the defendant is entitled to a trial de novo" "the case will be heard on both the law and the facts as though it has originated in the superior court."); *cf.* Ariz. R. Civ. P. 77(d) (in compulsory arbitration appeals, "the proceeding is denominated as an 'appeal,' . . . [but] [t]he arbitrator's legal rulings and factual findings are not binding on the court or the parties.").

### B.

¶39        The Board argues that, based on its last sentence, 910(F) still supplies the framework for review, even in a trial de novo.  That sentence says, "Notwithstanding any other law, this subsection applies in any action for judicial review of any agency action that is authorized by law."  A.R.S. § 12-910(F).  There are two ways to read that text.  One: it disclaims other

laws and other subsections in § 12-910—it clears the field. Two: it disclaims other laws, but not other subsections in § 12-910—it keeps other subsections intact. We adopt the latter reading.

**¶40** That is the most natural way to read the last sentence's introductory phrase—"[n]otwithstanding any other law." *See City of Phoenix v. Glenayre Elecs., Inc.*, 242 Ariz. 139, 144 ¶ 16 (2017) (The "introductory phrase, '[n]otwithstanding any other statute,' makes clear that the statute of repose controls over *other*, potentially conflicting state laws."(emphasis added)). The last sentence does not negate other subsections in § 12-910 (e.g., 910(D)), it only makes 910(F) control over *other* conflicting laws.

**¶41** Beyond its last sentence, the rest of 910(F) does not mesh with a trial de novo—a strong contextual signal 910(F) does not always apply. *See Planned Parenthood Ariz., Inc.*, 257 Ariz. at 142 ¶ 15. Its first sentence says, "After reviewing the administrative record and supplementing evidence presented at the evidentiary hearing, the court may affirm, reverse, modify or vacate and remand the agency action." A.R.S. § 12-910(F). But when a court holds a trial de novo, it does not review the administrative record. It creates a new record and reviews the parties' evidence anew. *See infra* ¶ 59. And a trial de novo is not an evidentiary hearing—it is a trial.

**¶42** The rest of 910(F) meshes no better. To say 910(F) is internally inconsistent is an understatement. Two sentences in, 910(F) says, "The court shall affirm the agency action unless . . . the agency's action is contrary to law, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion." That sentence in large part—except the "contrary to law" portion—requires deference to agency decision-making. *See Simms v. Simms*, ___ Ariz. ___, ___ 567 P.3d 92, 104 ¶ 43 (App. 2025) ("Courts have repeatedly referred to substantial evidence review as deferential."). The Board tacitly admits this—it argues that reviewing for substantial evidence requires us to affirm its decision if the evidence cuts both ways—that is deference. But 910(F)'s third and fourth sentences require courts, in regulated-party proceedings, to decide legal and factual questions "without deference to any previous determination" "by the agency." A.R.S. § 12-910(F). So the second sentence in 910(F) gives deference in all proceedings and the third and fourth sentences takes it away when answering legal or factual questions in regulated-party proceedings.

**¶43**		We attempted in *Simms* to reconcile this inconsistency. There, we explained that "in regulated-party proceedings [under 910(F)], reviewing courts independently review legal and factual questions[.]" *Simms*, 567 P.3d at 104 ¶ 41. But courts may still defer to an agency when it exercises statutorily granted discretion, including by using scientific or technical expertise. *Id.* at 108 ¶¶ 56-57, 59-61. After resolving all legal and factual questions de novo, the court decides "whether its independent factual and legal conclusions, along with any unchallenged agency conclusions, provide substantial evidence supporting the agency action." *Id.* at 109 ¶ 62. So 910(F)'s third and fourth sentences are consistent with a trial de novo, but its second sentence and its overall framework are not.

**¶44**		We know this because, for at least ninety years, the phrase "trial de novo" has meant that "the case should be tried *in all manners* as though the superior court were the court of original jurisdiction." *Duncan*, 59 Ariz. at 40–41 (emphasis added); *Burris*, 46 Ariz. at 132. Applying 910(F) in a trial de novo under 910(D) is inconsistent with that meaning. Under 910(F), the court does not act as though it has original jurisdiction. It reviews the prior agency decision, holds (when requested) an evidentiary hearing, and, after resolving factual and legal questions de novo, determines whether the decision provides substantial evidence for the agency action. *Simms*, 567 P.3d at 109 ¶ 62. Superimposing that framework onto 910(D) would nullify its text allowing a trial de novo. Rather than writing "trial de novo" out of 910(D) (and 910(C)), we interpret 910(F) to keep each of § 12-910's subparts intact. *See Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019) (we "give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous.").

**¶45**		Under our interpretation, 910(F) retains full vitality—it still applies in most circumstances. After our interpretation, there are only three exceptions to 910(F)—in subsections (C), (D), and (G). But each applies only when certain conditions are met. *See* A.R.S. §§ 12-910(C), (D), (G). In all other instances, 910(F) applies. So our interpretation hardly makes 910(F) superfluous. After all, "[l]anguage in a statute is not rendered superfluous merely because in some contexts that language may not be pertinent." *United States v. Turkette*, 452 U.S. 576, 583 n.5 (1981).

**¶46**		Unlike our concurring colleague (*see infra* ¶ 85), we conclude, as between 910(D) and (F), (D) is more specific. Again, 910(D) applies to a subset of agency appeals and only when an eligible party makes a timely demand. *See* A.R.S. § 12-910(D). On the other hand, 910(F) is a catchall—it applies when subsections (C), (D), or (G) do not. A.R.S. § 12-910(F). So our interpretation treats "the specific provision"—910(D)—"as an exception to

the general rule"—910(F).  *See Sholem v. Gass*, 248 Ariz. 281, 288, ¶ 28 (2020) (quoting *Reading Law* at 183).

**¶47**　　　　Textualism "does not limit one to the hyperliteral meaning of each word in the text."  *See Serrato*, ___ Ariz. at ___ ¶ 15 (quoting *Reading Law* 356).  It, instead, uses context to avoid making any statute or subsection void or absurd.  *Supra* ¶ 12.  The Board's interpretation—that 910(F) always applies—erases "trial de novo" in 910(D) (and 910(C)) and makes § 12-910 even messier.  Our interpretation retains "trial de novo" in 910(D) and does not make § 12-910 more abstract than it already is.  The superior court erred by applying 910(F) when Huber demanded a trial de novo under 910(D).[2]

### III.

**¶48**　　　　Huber argues the superior court erred in other ways.

### A.

**¶49**　　　　Huber says the court erred by placing the burden of proof on her.  In its final ruling, the court said Huber had to "show[] that the Board's action . . . was contrary to law, unsupported by substantial evidence, arbitrary or capricious, or an abuse of discretion."  Huber is correct that, in a trial de novo, the Board has the burden to show a licensee committed unprofessional conduct and should have her license revoked.

**¶50**　　　　At the administrative hearing, the Board had to show Huber engaged in unprofessional conduct.  *See* A.R.S. § 41-1092.07(G)(2); A.A.C. R2-19-119.  Once Huber requested a trial de novo, the court had to act like it was "the court of original jurisdiction."  *Duncan*, 59 Ariz. at 41.  So it was "incumbent upon the [Board] . . . on appeal before the superior court, to present its case first and bear the burden of proof."  *Vazzano v. Super. Ct.*, 74 Ariz. 369, 372 (1952).  Thus, on remand, the Board must show that Huber committed unprofessional conduct justifying revocation of her license— and it must present its evidence first.

### B.

**¶51**　　　　Huber next claims the superior court erred in prohibiting her counterclaims against the Board.  We disagree.

---

[2]　　　To be fair, the superior court did not have the benefit of *Simms* when it made any of its decisions.

¶52        Our supreme court has explained that a party's request for a trial de novo does not allow the superior court to act as though the case *actually* started there—it is still an appeal. *See Rojas v. Kimble*, 89 Ariz. 276, 279 (1961). Or, as we have put it, characterizing review as "a trial de novo *does* have relevance to the scope of review, but it *does not* change the essential character of the proceeding as an appeal." *Inspiration Consol. Copper Co. v. Ariz. Dep't of Revenue*, 147 Ariz. 216, 233 (App. 1985) (emphasis added). Even in a trial de novo, the superior court's jurisdiction remains appellate. So "[t]he [s]uperior [c]ourt is limited to the questions properly raised before the administrative hearing[.]" *Madsen v. Fendler*, 128 Ariz. 462, 466 (1981). And the court does not have "jurisdiction to hear new causes of action between new parties[.]" *Id.; see also Berry v. Ariz. State Land Dep't*, 133 Ariz. 325, 326 (1982) ("If the administrative agency has no jurisdiction to consider a question, the [superior] court has none," even if it could have done so under its original jurisdiction.). Thus, the superior court correctly disallowed Huber's counterclaims against the Board.

¶53        In a similar vein, Huber raised constitutional issues in the superior court. Huber, for example, argued the Board violated her Fourteenth Amendment rights. Because "[t]he [s]uperior [c]ourt is limited to the questions properly raised before the administrative hearing," *Madsen*, 128 Ariz. at 466, it must address Huber's constitutional issues only if the Board could have addressed them, *see McMichal-Gombar v. Phoenix Civ. Serv. Bd.*, 256 Ariz. 343, 349 ¶ 22 (2023) ("[A]gencies may apply constitutional doctrines when resolving claims. An agency, however, can only apply those doctrines to issues it is authorized to resolve." (cleaned up)). Otherwise, to raise issues (constitutional or otherwise) beyond the Board's adjudicatory authority, Huber must bring them in an original action.[3] *See id.* at 351 ¶ 26.

## C.

¶54        Third, Huber contends the superior court should have required new pleadings when the appeal started. We again disagree.

¶55        Ordinarily, "[s]ubject matter jurisdiction attaches to the superior court when a complaint or petition is filed." *Glenn H. v. Hoskins*, 244 Ariz. 404, 408 ¶ 11 (App. 2018). But the process for initiating "[a]n action to review a final administrative decision" is different. That process,

---

[3]        We do not address whether Huber's counterclaims, if brought separately, could be consolidated with the trial de novo on the Board's complaint against her. *See* Ariz. R. Civ. P. 42(a).

set out in A.R.S. § 12-904(A), says an action "shall be commenced by filing a notice of appeal within thirty-five days from the date when a copy of the decision sought to be reviewed is served upon the party affected." A.R.S. § 12-904(A); *see also* A.R.S. § 12-907 ("Within twenty days after service of the notice of appeal," all appellees "shall file a notice of appearance in response to the notice of appeal."). The notice of appeal must "identify the final administrative decision sought to be reviewed and include a statement of the issues presented for review." A.R.S. § 12-904(A). Subsection 12-904(A) does not describe a different process when a party demands a trial de novo.

¶56            Before 2012, § 12-904(A) required a complaint to start judicial review. *See* A.R.S. § 12-904(A) (2011). But that year, the legislature amended § 12-904(A) to replace the complaint process with a notice of appeal process. *See* 2012 Ariz. Sess. Laws, ch. 322, § 3 (2d Reg. Sess.) (S.B. 1193). Despite later adding a "trial de novo" in § 12-910(D), the legislature did not change the process to obtain judicial review. *See* 2021 Ariz. Sess. Laws, ch. 281, § 1 (1st Reg. Sess.) (S.B. 1063).

¶57            This does not mean the superior court cannot allow new pleadings after a party demands a trial de novo. If the court thinks allowing new pleadings will help better frame the issues, it may (and should) do so. *See Vazzano*, 74 Ariz. at 372 ("[T]he superior court failed to require the parties (*as it might well have done*) to frame the issues before proceeding to trial." (emphasis added)).

### D.

¶58            The parties agree the court erred by admitting the entire administrative record, including the ALJ and Board decisions, into the trial record. So do we.

¶59            Subsection 12-910(E) says the record "shall consist of the record of the administrative proceeding, and the record of any evidentiary hearing, *or* the record of the trial de novo." A.R.S. § 12-910(E) (emphasis added). Using "or" after the second comma is a tell. By doing so, the statute groups the administrative record and the record of any evidentiary hearing together using "and," but it sets off the "record of the trial de novo" using a comma and "or." *See* A.R.S. § 12-910(E). So the statute identifies two types of records: (1) the administrative record and the evidence from an evidentiary hearing, and (2) the record from a trial de novo. The first category does not apply in a trial de novo under § 12-910(D). Only the second category applies, and it is composed only of evidence the court admits during the trial de novo.

¶60        With that said, the court can admit evidence even if it was also in the administrative record.  The court can do so when the evidence is otherwise admissible.  For example, testimony from an administrative hearing may be admitted under the rules of evidence.  *Cf. Hancock v. O'Neil*, 253 Ariz. 509, 514 ¶ 20 (2022) (in attorney discipline proceedings "transcripts and other evidence of collateral proceedings" may be admitted "as permitted by the rules of evidence").  Similarly, written statements a licensed party made to an agency may be admitted with proper foundation. On the other hand, the court should rarely (if ever) admit the ALJ or agency decision.  And, in a trial de novo, the court should never automatically admit the *entire* administrative record (unless the parties agree otherwise).

**E.**

¶61        Lastly, Huber argues the court should have applied the Civil Rules and allowed additional discovery and summary judgment motions. The Board does not dispute that the court could have done so; it instead argues new discovery and summary judgment motions were unnecessary here.  Yet the superior court's decision was not tied to this case.  Rather, the superior court concluded that "the presumptive levels of discovery provided in the Rules of Civil Procedure . . . do not apply" and "[m]otions for summary judgment are not contemplated by the statutes or rules."

¶62        There is some tension between the Rules of Procedure for Judicial Review of Administrative Decisions ("JRAD") and § 12-914(B). JRAD 1 says that "[e]xcept for provided elsewhere in these rules, the [Civil Rules] do not apply to proceedings held pursuant to A.R.S. §§ 12-901- to - 914."  Although JRAD 11 explains how to request a trial de novo, no rule in JRAD says the Civil Rules apply during a trial de novo.  Section 12-914(B), on the other hand, says that "[t]he rules of civil procedure apply" when "the superior court orders a trial de novo" under § 12-910.  But we need not resolve this tension—the Board concedes the Civil Rules apply in a trial de novo.  *But see State v. Brearcliffe*, 254 Ariz. 579, 584–85 ¶ 21 (2023).

¶63        Based on that concession, the superior court erred by refusing discovery and summary judgment motions.  Instead, the court should have allowed the parties to conduct discovery (under Civil Rules 26 through 37) and seek summary judgment (under Rule 56).

¶64        Because Rule 26 applies, the parties in a trial de novo may conduct discovery only if it is "relevant to any party's claim or defense and proportional to the needs of the case[.]"  Ariz. R. Civ. P. 26.  Depending on the circumstances, the court may order the parties to exchange full

disclosure statements under Rule 26.1 or order truncated disclosure statements like those under Rule 77. *See* Ariz. R. Civ. P. 77(f)(1), (2) (in an appeal from a compulsory arbitration award, the parties "may serve a 'List of Witnesses and Exhibits Intended to be Used at Trial' that complies with Rule 26.1."). And the court may allow the parties the presumptive amount of discovery under Rule 26.2(f) — or the court may instead allow a greater or lesser amount. *See* Ariz. R. Civ. P. 26(b).

¶65        Although the superior court has wide discretion to manage discovery, *See v. Super. Ct.*, 144 Ariz. 346, 348 (1985), that discretion is not unlimited. The Civil Rules, regardless of circumstances, allow some relevant discovery; the court must heed that requirement in a trial de novo. *See* Ariz. R. Civ. P. 26(a), (b). And the court must allow summary judgment motions. *See* Ariz. R. Civ. P. 56(a) ("A party may move for summary judgment[.]").

¶66        One last point. As explained, there is tension between JRAD and § 12-914(B) about whether the Civil Rules apply in a trial de novo. And the current Civil Rules say nothing about discovery or pleading and motion practice when § 12-914(B) applies. We urge our supreme court to adopt new rules, or amend the current ones, to eliminate that tension and provide the bench and bar with guidance on how to proceed when a party requests a trial de novo under § 12-910. *See, e.g.*, Ariz. R. Civ. P. 77.

**IV.**

¶67        What does all this mean for Huber's appeal? To understand, let's take one of the Board's allegations and explain the correct process.

¶68        The Board alleged Huber committed unprofessional conduct by "[o]ffering, undertaking or agreeing to cure or treat a disease, injury, ailment or infirmity by a secret means, method, treatment, medicine, substance, device or instrumentality." A.R.S. § 32-1501(31)(*l*). An ALJ found Huber did not adequately disclose the ingredients in her IVs. The ALJ also found that "the evidence does not show that the nutrients and the amounts included in the IVs" "were trade secrets under A.R.S. § 44-401(4)." According to the ALJ, the Board proved its case and should revoke Huber's license.

¶69        The Board "adopt[ed] the ALJ's Findings of Facts and Conclusions of Law" and revoked Huber's license. Huber appealed to the superior court and timely demanded a trial de novo with a jury.

¶70 At that point, the court *could* have ordered (but did not have to order) the parties to file a complaint and answer, *see supra* ¶ 57, but it correctly refused to allow Huber's counterclaims, *see supra* ¶ 52. The parties should have been allowed to conduct discovery and seek summary judgment (if desired). *See supra* ¶ 65. If the Board's claim survived summary judgment, a jury should have decided Huber's appeal de novo. *See supra* ¶¶ 37-38. Like any other trial, the parties should have created the trial record by admitting exhibits and offering witness testimony under the Rules of Evidence. *See supra* ¶ 60.

¶71 During trial, the parties should have presented evidence about whether Huber engaged (or not) in "unprofessional conduct" as defined in § 32-1501(31)(l). Having the burden to prove Huber did so, the Board should have presented its evidence first. *See supra* ¶ 50. Huber should have responded with evidence she did not engage in such conduct and the Board should have presented rebuttal evidence she did. If any legal questions arose, the court should have resolved them with no deference to the Board. After the parties finished, the jury should have resolved whether the Board proved by a preponderance of the evidence that Huber engaged in unprofessional conduct without the jury knowing, let alone deferring to, what the ALJ or Board decided on that question.

¶72 If the jury found Huber engaged in unprofessional conduct, then it should have decided whether her license should be revoked using the standard in A.R.S. § 32-1551(H). If yes, then the superior court should have entered judgment ordering the Board to revoke her license. If no, then the jury could have imposed any lesser sanction in § 32-1551(H) or no sanction at all. The court should have proceeded this way in resolving the Board's other allegations.

**CONCLUSION**

¶73 Because the court did not hold a de novo jury trial, we vacate its order affirming the Board's decision and remand for proceedings consistent with this opinion.

**W E I N Z W E I G**, Vice Chief Judge, concurring in part and dissenting in part:

¶74        I agree with Sections I, III and IV of the majority opinion, but I disagree with Section II.  I write separately to harmoniously interpret A.R.S. § 12-910(D) and (F).  *See Powers v. Isley*, 66 Ariz. 94, 100 (1947) ("[A] statute should be so construed as to render it a consistent and harmonious whole.").

## I.        Section 12-910(F) applies here.

¶75        The majority holds that § 12-910(F) does not apply in this agency action; only § 12-910(D) does.  Op. ¶ 47.  I disagree.  Subsections (D) and (F) both apply here.  The final sentence of § 12-910(F) says so:

> Notwithstanding any other law, this subsection applies in any action for judicial review of any agency action that is authorized by law.

¶76        The plain and ordinary meaning of these words direct that § 12-910(F) applies to *any agency action*.  *Planned Parenthood Ariz., Inc. v. Mayes*, 257 Ariz. 137, 142, ¶ 15 (2024) ("Clear and unequivocal language determines a statute's meaning."); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (2012) ("The ordinary-meaning rule is the most fundamental semantic rule of interpretation.").  The Board is an "agency," A.R.S. § 12-901(1), and its revocation of Huber's license was an "action."  That is uncontested.

¶77        The majority tries to cabin § 12-910(F) with the first four words of the final sentence, interpreting "notwithstanding any other law" to mean notwithstanding any other *statutes except § 12-910*.  Op. ¶¶ 39–40.  That interpretation would mean that § 12-910(F) dominates over "all agency actions" in all other statutes, but is subservient to other subsections in § 12-910.  I am not persuaded.  First, the legislature qualified the very next subsection with a "[n]otwithstanding subsection (F) of this section."  A.R.S. § 12-910(G).  It knew how to be specific and could have started this sentence with: "Notwithstanding any other law *except § 12-910*,"but it did not.  *See Indus. Comm'n Lab. Dep't v. Indus. Comm'n*, 253 Ariz. 425, 427–28, ¶ 13 (App. 2022) ("[T]he legislature knows how to craft location-based restrictions, which appear elsewhere in the same statute.").

¶78        Second, the majority's interpretation breaks from our supreme court's frequent reminder that Arizona courts must "read[] each

word, phrase, clause, and sentence in such a way to ensure no part of the statute is *void or trivial.*" *Planned Parenthood*, 257 Ariz. at 142, ¶ 15 (emphasis added). Despite the plain language of § 12-910(F), the majority concludes it is ineffectual here. Summing up, the plain language of § 12-910(F) says that it applies in all agency actions, including this one.

## II. Section 12-910(F) can be read harmoniously with Section 12-910(D).

¶79     The majority contends that § 12-910(D) and (F) are incompatible. Op. ¶ 46. I disagree. The third and fourth sentences of subsection (F) announce a specific rule in proceedings brought by or against regulated parties—the superior court must decide all questions of fact and law anew:

> *In a proceeding brought by or against the regulated party*, the court shall decide all questions of law, including the interpretation of a constitutional or statutory provision or a rule adopted by an agency, without deference to any previous determination that may have been made on the question by the agency. *In a proceeding brought by or against the regulated party*, the court shall decide all questions of fact without deference to any previous determination that may have been made on the question by the agency.

A.R.S. § 12-910(F) (emphasis added).

¶80     The second sentence of subsection (F) announces the general rule—deference remains in all other proceedings:

> The court shall affirm the agency action unless the court concludes that the agency's action is contrary to law, is not *supported by substantial evidence*, is arbitrary and capricious or is *an abuse of discretion*.

A.R.S. § 12-910(F) (emphasis added).

¶81     This interpretation is supported by an arsenal of canons of statutory interpretation, including the ordinary meaning canon, the harmonious canon and the general-specific canon. These canons yield a plain and simple rule: Deference is required in all administrative proceedings except for proceedings brought by or against regulated parties.

¶82         Only that interpretation satisfies the harmonious canon because it forges a harmonious statute, resolving all conflicts and recognizing all subsections of § 12-910. *Baker v. Gardner*, 160 Ariz. 98, 101 (1988) (directing Arizona courts to "construe seemingly conflicting statutes in harmony when possible"); Scalia & Garner, *supra*, at 180 ("The imperative of harmony among provisions is more categorical than most other canons of construction because it is invariably true that intelligent drafters do not contradict themselves.").

¶83         The interpretation also creates harmony between the last sentence of subsection (A) and the promised "evidentiary hearing" in the first sentence of subsection (F). *See Planned Parenthood*, 257 Ariz. at 142, ¶ 15 (statutes are interpreted "in view of the entire text" (quoting *Nicaise v. Sundaram*, 245 Ariz. 566, 568, ¶ 11 (2019))). An evidentiary hearing provides the mechanism for the court to hear the facts, one-half of the promised de novo review. *See* A.R.S. § 12-910(A).

¶84         Only that interpretation satisfies the ordinary meaning canon because it recognizes the plain and ordinary meaning of each word in each sentence of A.R.S. § 12-910(F). Scalia & Garner, *supra*, at 69, 174; *see Planned Parenthood*, 257 Ariz. at 142, ¶ 15.

¶85         And that interpretation satisfies the general-specific canon too because the specific provision controls in "a conflict between a general provision and a specific provision." Scalia & Garner, *supra*, at 183. The rationale of this canon is that "the two provisions are not in conflict, but can exist in harmony." *Id.* at 180, 185 ("[T]here can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously."). Applied here, deference is still required in all agency actions (the general rule) except for proceedings brought by or against regulated parties (the specific rule), where no deference is permitted.

¶86         To reiterate, deference is still afforded to many agencies under this interpretation — e.g., Arizona Corporation Commission, Arizona Board of Executive Clemency and Arizona Industrial Commission. But no deference is afforded to agencies that regulate a profession or occupation in actions by or against the professionals they regulate — e.g., Arizona State Board of Nursing, Arizona Medical Board and the Board here.

## III.    The majority's interpretation.

¶87         The majority contends that subsection (F) is "internal[ly] inconsisten[t]" because the third and fourth sentences prohibit deference and the second sentence requires it. Op. ¶ 42. But by limiting deference to

actions by or against a regulated party, we mend the tension in subsection (F). *See Powers*, 66 Ariz. at 100 ("[A] statute should be so construed as to render it a consistent and harmonious whole."). A trial de novo is available under subsection (D) to review the "final administrative decisions of agencies that regulate a profession or occupation," A.R.S. § 12-910(D), and the superior court (or jury) must not defer to the agency at trial, A.R.S. § 12-910(F).

¶88        The majority also insists that subsections (D) and (F) cannot be reconciled under the first sentence of subsection (F) because a trial de novo is impossible when the superior court "review[s] the administrative record and supplement[s] evidence presented at the evidentiary hearing." Op. ¶ 41; A.R.S. § 12-910(F).

¶89        I respectfully disagree. Our supreme court has described a trial de novo when, as here, the superior court hears an "appeal[] from an inferior court or administrative board." *Duncan v. Mack*, 59 Ariz. 36, 42 (1942). The court explained that a trial de novo includes the right "to take new evidence and to ignore the department's findings, and make its own independent findings." *Id.* at 41. That's precisely what regulated parties get under subsection (F): A new trial, unshackled from administrative deference, with a mechanism to take more evidence.

¶90        The majority also contends that a trial de novo is impossible under subsection (F) because the first sentence directs the superior court to "review" the administrative record and requires continued deference under the recent decision in *Simms v. Simms*, ___ Ariz. ___, 567 P.3d 92 (2025). Op. at ¶¶ 41, 43–44. Not so. A directive to *review* the administrative record should not be confused with deference; it only directs the superior court to review the administrative record, which is not inconsistent with a trial de novo. *See Duncan*, 59 Ariz. at 41.

¶91        A trial de novo means a new trial—zero deference on facts or law, *Trial De Novo*, Black's Law Dictionary (12th ed. 2024), unlike the deference still afforded to administrative proceedings on issues of credibility and expertise under *Simms*. 567 P.3d at 107–08, ¶¶ 54, 58. A trial de novo starts the action anew; the superior court is untethered from prior findings of fact and law; allowed to review the administrative record, but empowered to hear more evidence collected and presented by the parties at a robust evidentiary hearing. A.R.S. § 12-910(A), (F). As a result, the superior court hears from the witnesses and assesses their credibility itself; and nothing prevents the superior court from hearing from the agency's scientific and technical experts and assessing the expertise itself.

¶92 The majority also reasons that the general-specific canon supports its interpretation that only subsection (D) applies here, not subsection (F), because subsection (D) "applies to a subset of agency appeals and only when an eligible party makes a timely demand," and subsection (F) is a general catch-all provision. Op. ¶ 46; *see* A.R.S. § 12-910(D), (F).

¶93 That argument is not persuasive. For starters, the rationale behind the general-specific canon is that "two provisions are not in conflict, but can exist in harmony." Scalia & Garner, *supra*, at 180, 185. As explained above, subsections (D) and (F) can exist in harmony. By contrast, the majority wields the general-specific canon to neuter subsection (F) and create only more conflicts, not resolve them. *See id.* at 180 ("[T]here can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously.").

¶94 The majority's reliance on *Sholem v. Gass*, 248 Ariz. 281 (2020) is misplaced. There, the supreme court had to choose between two wholly irreconcilable rules of civil procedure, and it held the specific rule eclipses the general rule because "the specific provision is treated as an exception to the general rule." *Id.* at 288, ¶ 28 (quoting Scalia & Garner, *supra*, at 183). At issue here are partially reconcilable subsections that can be harmoniously interpreted.

## IV. This case.

¶95 Section 12-910 offers no definition for "regulated party," so we may look to related statutes to determine its meaning. *Planned Parenthood*, 257 Ariz. at 142, ¶ 15 ("[Arizona courts] interpret statutes 'in view of the entire text, considering the context and related statutes on the same subject.'" (quoting *Nicaise*, 245 Ariz. at 568, ¶ 11)). The related statute in this case is the enabling statute that created the Arizona State Board of Nursing. That statute defines a "regulated party" as "any person or entity that is licensed, certified, registered, recognized or approved pursuant to this chapter." A.R.S. § 32-1601(26).

**¶96** Huber is a regulated party. She is entitled to a jury trial de novo at which the Naturopathic Physicians Medical Board receives no deference on issues of fact or law.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR